# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6448 | **DATE** | 6/23/2004 |
| **CASE TITLE** | | Harris vs. Barnhart | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] As stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [20-1] or remand the previous administrative opinion [20-2] is denied. Defendant's motion for summary judgment [22-1] is granted and the decision of the ALJ is affirmed. The Clerk of Court is directed to enter judgment in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Gordon L. Harris.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | | **Document Number** |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | **JUN 2 4 2004** | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 6/23/2004 | | |
| KF | courtroom deputy's initials | | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | | KF mailing deputy initials | |

GORDON L. HARRIS,                    )
                                     )
          Plaintiff,                 )
                                     )          No. 01 C 6448
     v.                              )
                                     )          Mag. Judge Michael T. Mason
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
          Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Gordon Harris ("Harris" or "plaintiff"), has brought a motion for summary

judgment seeking judicial review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner" or "defendant"), who denied Harris' claim for

disability insurance benefits ("DIB") and supplemental security income ("SSI") under the

Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423(d) (2000). Harris now appeals that

decision in federal court as permitted by Section 405(g) and Section 1383(c)(3).

Defendant, Barnhart, filed a cross motion for summary judgment asking that we uphold

the decision of the Administrative Law Judge ("ALJ"). For the following reasons, we

deny plaintiff's motion and grant defendant's motion, affirming the decision of the ALJ.

### Procedural History

Harris filed an application for DIB and SSI on January 10, 1995, alleging

disability since January 15, 1993. (R. 29-32). Harris' application was denied initially

and upon reconsideration. (R. 33-38, 41-44). On January 15, 1997, ALJ Maren

Dougherty conducted a hearing. Harris, Carnell Green, his brother, and Meyer Klein, a

Vocational Expert ("VE"), testified. (R. 184-235). At the conclusion of the hearing, the ALJ ordered Harris to see an orthopedist to evaluate his wrist and to have current x-rays taken. She ordered the record kept open for 30 days to allow for the additional medical examination and x-rays, and to allow the VE and plaintiff's counsel to supplement the record. On March 25, 1999, after receiving and reviewing all of the supplemental information, the ALJ issued an opinion denying Harris' claim. (R. 9-16). The ALJ found that Harris was capable of performing his past relevant job as a security guard, as generally performed in the economy, and, therefore, was not disabled. (R. 16). On June 16, 2001, the Appeals Council denied Harris' request for review. (R. 3-4). Consequently, the decision of the ALJ became the final decision of the Commissioner. See Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001); Reg. § 416.1481.

**Medical Evidence**

On January 15, 1993, Harris was admitted to the Emergency Room at Edward Hospital in Naperville, Illinois after falling approximately eight feet from a ladder at work. (R. 63). He tried to break the fall with his left hand and landed on his head and back. (R. 63). Harris' x-rays revealed anterior compressions of his L-1, T-11, and T-12 vertebrae, a small minimally displaced fracture of the right facet of his T-12 vertebrae, and a non-displaced fracture of the right side of his L-1 vertebra. (R. 64, 67-68). Harris also fractured his left wrist in two places. (R. 66). A June 3 MRI of Harris' lumbar spine indicated wedge deformity of Harris' T-11, T-12, and L-1 vertebrae. However, there was no evidence of disc herniation, spinal stenosis, or spinal canal narrowing. (R. 98).

Sometime after January 14, 1994, Thomas W. McNeill, M.D., Harris' treating physician, opined that Harris would not be able to return to his job as an ironworker

2

without certain restrictions. (R. 73). Dr. McNeill determined that Harris could only preform medium level work as defined by "Workers' Rehabilitation Services Incorporated in Chicago on their work capacity evaluation." (R. 73). Dr. McNeill suspected Harris' situation was permanent. (R. 73).

On January 23, 1995, at the request of the Illinois Department of Public Aid, G. Bridgeforth, M.D. examined Harris. (R. 74). Dr. Bridgeforth reported that Harris had poor posture, was mildly obese, and that his reflexes were difficult to elicit. (R. 76). Dr. Bridgeforth opined that Harris had a full capacity for walking, bending, standing, stooping, sitting, turning, climbing and pushing in an 8-hour work day. (R. 77). Dr. Bridgeforth also determined that Harris could repeatedly lift up to 50 pounds during an 8- hour work day. (R. 77).

On April 10, 1995, Muhammad Irshad, M.D., a non-examining State Agency physician, completed a Residual Functional Capacity ("RFC") assessment for Harris. (R. 78-85). Dr. Irshad concluded that Harris could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8- hour workday, and sit about 6 hours in an 8-hour workday. (R. 79). Additionally, Dr. Irshad opined that Harris was unlimited in his ability to push and/or pull with his extremities. (R. 79).

On December 21, 1996, Kevin J. Regan, D.C., a chiropractor/acupuncturist examined Harris at the request of his attorney. (R. 99). The chiropractor noted that Harris' lower lumbar paraspinal musculature was very tender and spastic. (R. 99). The flexor and extensor surfaces of Harris' left wrist were very tender, and Harris' left hand grip was weaker than his right. (R. 99). Mr. Regan reported that a positive Phalen's

3

test reproduced pains from the wrist to all Harris' left finger tips and Harris had hyproasthesia of the dorsal and palmar surfaces of his left hand. (R. 99). Mr. Regan noted that Harris' lumbar flexion and extension were reduced by 75% of their normal ranges, and lumber rotation and lateral flexion were reduced by 50% of their ranges of motion. (R. 99). A positive Kemp's test produced pain down into Harris' lumbar spine. (R. 99). The chiropractor diagnosed Harris with chronic left wrist carpal tunnel syndrome secondary to trauma, chronic degeneration of the anterior lumbar disc/vertebral bodies, and myofascial pain syndrome secondary to trauma. (R. 99).

A partial, unsigned RFC questionnaire, attributed to Mr. Regan by the ALJ, noted that Harris could only sit or stand continuously for 10 minutes and sit, stand, or walk less than 2 hours in an 8-hour workday. (R. 102). The questionnaire reported that Harris must walk around every 10 minutes for 5 minutes, must take 15 minute breaks every 30 minutes, and elevate his legs 100% of the time. (R. 103). The RFC also stated that Harris could only lift less than 10 pounds occasionally and could only use his right hand for repetitive actions 33% of an 8-hour workday. (R. 103).

Harris saw Arthur Jones, M.D. twice in 1996 for complaints of chest pain. (R. 118-24). Harris was able to exercise to 8 METS and reached 95% of his predicted maximum heart rate. (R. 121). His EKG and thallium scan were normal. (R. 121-22). Lab tests indicated that Harris had high glucose and cholesterol levels, and high blood pressure. (R. 118-20). On January 2, 1997, Dr. Jones completed a RFC questionnaire for Harris. (R. 104-07). Dr. Jones opined that Harris could only continuously sit or stand for 20 minutes at one time, sit for 2 hours in an 8-hour workday, and stand and/or walk for 2 hours in an 8-hour workday. (R. 105). Additionally, Dr. Jones noted that

4

Harris could only occasionally lift less than 10 pounds. (R. 106).

At the conclusion of the hearing, the ALJ ordered that Harris submit to another examination. On April 3, 1997, Leonard R. Smith, M.D., S.C., examined Harris. (R. 125). Dr. Smith observed a localized mild kyphos at Harris' L-1 vertebra, and subjective tenderness from the T-12 to L-1 vertebrae, but no scars, atrophy, or swelling. (R. 125). Harris' forward flexion was limited to 10 degrees, his extension was limited to 5 degrees, his lateral flexion was limited to 5 degrees, and his iliolumbar torsional motion was limited to 45 degrees. (R. 125-26). Dr. Smith noted thickening of Harris' left wrist, and subjective tenderness in the dorsum of the radius. (R. 126). Harris had no loss of sensation. (R. 126). After reviewing multiple x-rays from 1993, Dr. Smith determined that Harris' lumbar spine revealed healed compression fractures of his T-11, T-12, and L-1 vertebrae, and an increased kyphosis at his T-12 through L-1 vertebrae. (R. 126). X-rays of Harris' left wrist revealed healed fractures of the radius and navicular bones. (R. 127). According to Dr. Smith's RFC assessment, Harris could occasionally lift 25 to 30 pounds and frequently lift 20 pounds. (R. 128). Dr. Smith opined that Harris could sit for 2 to 3 hours at a time for a total of 6 hours in an 8-hour workday. (R. 129).

Thereafter, Harris was evaluated by Irwin I. Feinberg, M.D., at the request of his attorney. (R. 135). Dr. Feinberg noted that there was no atrophy of Harris' shoulder/arm musculature, but Harris' range of motion in his left hand was diminished. (R. 135). Dr. Feinberg opined that Harris probably had a tear of the radial ulnar cartilage and a tear in the radio scapholunate joint. (R. 135). Additionally, Dr. Feinberg noted that Harris had chronic pain in the dorsal lumbar area and in the low back area because of osteoarthritis. (R. 135). Dr. Feinberg concluded that Harris would not be

5

able to return to his previous job as an ironworker and would have difficulty obtaining employment in an occupation where he has to use his hands. (R. 135).

**Plaintiff's Testimony**

At the time of the ALJ's hearing, Harris was 49 years-old and had an eighth grade education. (R. 190). He testified that as a result of his 1993 fall, he filed a worker's compensation claim, which settled for $27,000. (R. 206). Harris also stated that he is right handed[1] and thinks he could lift up to 20 or 25 pounds. (R. 220).

Harris testified that he has not worked since January 15, 1993. (R. 207). Harris' last job was for about three months as an iron worker, where he took down steel columns and beams. (R. 191). That job required him to lift up to 100 or 150 pounds, and he was not able to sit. (R. 191). Prior to that, Harris worked as a security guard for a year and a half. (R. 192-93). That job required him to sit two thirds of the time, and walk the other one third of the workday. (R. 192). It also entailed lifting 50 to 60 pound cartons and 30 to 40 pound baskets. (R. 208). Harris did not carry a gun and received about two weeks of on the job training. (R. 225).

Harris also drove a truck for four years. (R. 193-94). That job required lifting up to 100 pounds. (R. 194). His final relevant employment was as a laborer in construction, which included lifting 90 to 100 pound bags of concrete and standing constantly. (R. 195).

At the hearing, Harris complained of sharp, throbbing pain in his lower back. (R. 199). He testified that he was taking four to six Ibuprofen a day, whenever his pain got

---

[1]This Court believes that Harris misspoke at the hearing because all of his medical records suggest that his left hand is his dominant hand.

severe, but he was not taking any prescription pain medication. (R. 199, 211-12). Harris also stated that his left wrist was painful and stiff all of the time. (R.1999). He testified that he could not lift with his left wrist and could only walk about a block and a half at a time because after that his back would tighten up and hurt. (R. 199-00). Harris stated that he could only stand for 20 minutes at a time because he has to shift positions to relieve tension in his back, and he is most comfortable when lying down. (R. 200).

Harris' daily activities include taking his grandchildren to school, cooking, dusting, and washing clothes and dishes. (R. 201, 217). Harris was able to drive for an hour and a half straight through to the hearing. (R. 206). Harris testified that he was able to lift a gallon of milk with his left hand, but it would aggravate his pain. (R. 215). However, he could lift a glass of water or a light pot with his left hand without any pain. (R. 215). According to Harris, he cannot hunt, fish, sweep, shovel snow, or work on cars. (R. 217).

### Witness' Testimony

Carnell Green ("Green"), Harris' brother, testified at the hearing on his behalf. (R. 221). Green stated that he visits Harris almost every day for about 3 hours. (R. 221-22). He helps Harris with projects such as repairing Harris' roof and servicing Harris' car. (R. 222). Green testified that Harris complains about his pain all the time. He also believes that Harris is not as outgoing as he used to be. (R. 223).

**Vocational Expert's Testimony**

VE, Meyer Klein, also testified. (R. 224). The VE classified Harris' job as an iron worker as unskilled, very heavy work. (R. 225). He classified the security position as generally considered unskilled, light work, but found that Harris' specific job would probably be considered medium work because it periodically required carrying boxes. (R. 225). The VE classified driving a truck as semi-skilled, heavy work, and classified the construction job as unskilled, heavy work. (R. 226).

At the hearing, ALJ Dougherty posed four hypotheticals to the VE. First, the ALJ inquired as to whether there were any jobs that someone of Harris' age, education, and work experience could perform if he could lift up to 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours out of an eight hour workday, and could not use his non-dominant hand for twisting motions. (R. 226). The VE testified that such a person could not be employed as a laborer, truck driver, packing worker, or assembly worker because those jobs would require the use of both hands and the ability to make a twisting motion. (R. 226). However, the VE concluded that such a person could possibly work in security, and that approximately 11,000 such jobs were available in the Chicago-land area. (R. 226-27). The VE testified that these security jobs would be considered light work. (R. 227).

The ALJ modified the hypothetical twice, inquiring about what effect, if any, not being able to lift more than eight pounds with his left hand and not being able to use his hands for constant or repetitive fingering or gripping would have on the number of jobs available to Harris. (R. 227). The VE testified that neither of these two conditions would appreciably affect the number of available jobs. (R. 227).

8

The final hypothetical included a required sit/stand option. (R. 228). Under this restriction, the VE concluded that such a person could work as a surveillance monitor. The VE stated that approximately 5,000 of these jobs were available in the economy. (R. 228). The VE testified that such a job would require a person to stay in one position for 30 to 40 minutes at a time. (R. 228). The VE also stated if a person had to change positions every 20 minutes, that would be "appreciable" in their ability to perform the job. (R. 228). The VE testified that, in his opinion, a security monitor position is unskilled, light work. (R. 227, 229).

## Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. §405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The ALJ need not weigh every piece of evidence, however, when the Commissioner's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele,* 290 F.3d at 940. Generally, we cannot substitute our judgment for that of the ALJ by deciding facts anew, reweighing the evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998). However, if there is an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani v. Heckler,* 797 F.2d 508, 510 (7th Cir. 1986).

9

## Analysis

A person is disabled under the Act if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ conducts a five step analysis: (1) whether the claimant is presently unemployed, (2) whether the claimant's impairment is severe, (3) whether the impairment meets or exceeds any of the specific impairments listed in the regulation, (4) whether the claimant is unable to perform his or her previous occupation and (5) whether the claimant is unable to perform any other work in the national economy given his or her age, education, or work experience. *Cichon v. Barnhart*, 222 F. Supp. 2d 1019, 1025 (N.D. Ill. 2002) (citing 20 C.F.R. § 416.920(a) - (f)). Affirmative answers at steps three and five will lead to a finding that the claimant is disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). A negative answer at any step, other than three, will result in a finding that the claimant is not disabled. *Id.* The claimant carries the burden of proof for steps one through four. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). If the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that plaintiff is capable of performing. *Id.*

Additionally, the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that [the Court] may afford the claimant meaningful review of the [Commissioner's] ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331

F.3d 565, 569 (7th Cir. 2002). Therefore, the record must contain evidence to support the ALJ's findings, *and* the ALJ must rationally articulate a basis for those findings. *Steele*, 290 F.3d at 941.

Steps one through three of the ALJ's analysis are not contested. The ALJ found that Harris was not currently gainfully employed; suffered from the severe impairments of "back pain secondary to history of compression fractures at T11, T12 and L1 and left wrist pain secondary to history of fracture;" and did not have an impairment that met or medically equaled any of the specific impairments listed in the regulation. At step four, the ALJ found that despite Harris' impairments, he had the RFC to perform light work. Specifically, she found that Harris could not lift "more than 20 pounds occasionally or 10 pounds frequently," and that he could not perform "activities that require him to twist with his left, dominant arm repetitively." (R. 16). The ALJ did not find that Harris' impairments required a sit/stand option as part of his RFC. The ALJ concluded that Harris' past relevant work as a security guard did not require these precluded activities. Therefore, the ALJ found that Harris could perform his past relevant work and was not disabled. The ALJ never reached step five of the analysis.

**RFC Determination**

On appeal, Harris makes a number of arguments to support his request for a remand of his case to the ALJ for further analysis. We do not find any of his arguments persuasive. First, Harris contends that the ALJ's RFC determination is in error and not supported by substantial evidence. Specifically, Harris argues that the ALJ's RFC determination is incorrect because it does not include a sit/stand option or an accommodation for breaks in concentration due to pain. Plaintiff argues that his

allegations of pain and both of those limitations are supported by the medical evidence in the record. Harris also contends that the ALJ erred in finding his allegations of pain not credible.

In attacking the ALJ's RFC determination, plaintiff argues that the ALJ did not give proper weight to the findings of various doctors. Harris only had one treating physician for the impairments at issue in this case, Dr. McNeill. Dr. McNeill opined that plaintiff could perform medium work as determined by the Worker's Rehabilitation Services Incorporated in Chicago, which requires lifting up to 50 pounds occasionally. Dr. NcNeill did not suggest that Harris required a sit/stand option, or that he needed special accommodations due to breaks in concentration from pain. The ALJ's RFC determination was more restrictive than the findings of plaintiff's only treating physician.

Additionally, the ALJ's RFC finding was more restrictive than the findings of Dr. Bridgeforth, who similarly opined that plaintiff could perform medium work. The ALJ's RFC was also consistent with the findings of Drs. Smith, Feinberg and Irshad. Dr. Smith found that plaintiff could not lift more than 30 pounds occasionally and 20 pounds frequently, but that he did not require a sit/stand option. Dr. Feinberg, who examined Harris at the request of his attorney, opined that plaintiff required limitations on the use of his hands and only ruled out plaintiff's past work as an ironworker. Dr. Irshad opined that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, and that he could stand and/or walk about 6 hours in an 8 hour day. The findings of all three doctors are consistent with and/or less restrictive than the ALJ's RFC.

The findings that are more restrictive than the ALJ's come from two non-treating physicians and were properly discredited. Dr. Jones, a cardiologist, treated plaintiff

12

twice in 1996 for complaints of chest pain. Dr. Jones never treated Harris for any allegations related to his wrist or back. Thus, he was not a treating physician for the purposes of Harris' impairments at issue and his findings are not entitled to deference or substantial weight. *See Scheck v. Barnhart*, 357 F.3d 697, 702-03 (7th Cir. 2004). Moreover, the ALJ provided an adequate basis for discrediting Dr. Jones' findings. In his RFC evaluation, Dr. Jones found that plaintiff required a sit/stand opinion at work and that he could not sit or stand for more than ten minutes at a time. He also opined that Harris could not perform any work for an eight hour day at any exertional level due to pain in his wrist and back. The ALJ found that these conclusions were not supported by the medical findings in Jones' own examination or in the record as a whole. After reviewing the record we cannot find any fault with the ALJ's determination. The ALJ properly noted that plaintiff's medical records from Jones relate to his complaints of chest pain and did not support Jones' RFC, and that no other records provided to the ALJ supported such a restrictive RFC.

The ALJ also properly discredited the RFC determinations of the chiropractor, Mr. Regan. In an unsigned, incomplete RFC attributed to Mr. Regan, he found that Harris required a sit/stand option and could not sit or stand for more than ten minutes. Again, the ALJ properly supported his decision not to adopt Mr. Ragen's RFC by citing inconsistences between Mr. Regan's findings and the rest of the record. Mr. Regan found that Harris needed to elevate his legs all of the time, a limitation that directly contradicts Harris' testimony at the hearing. Additionally the ALJ cited Regan's finding that Harris had limitations on bimanual dexterity, even though he has no limitations of his right hand. For the above stated reasons, the ALJ's RFC determination was

13

supported by the medical evidence in the record and will not be overturned.

## Credibility

Next, plaintiff took issue with the ALJ's credibility determinations. To succeed on this ground, Harris must overcome the highly deferential standard that we accord credibility determinations. Because the ALJ is best positioned to evaluate the credibility of a witness, we reverse the ALJ's credibility filing only if it is 'patently wrong'. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when questioning the claimant's credibility as to symptoms of pain, the ALJ must follow the specific requirements set forth in SSR 96-7. First, the ALJ must determine whether the pain is substantiated by medical evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If the pain is not supported by objective medical evidence, the ALJ evaluates the effects of the complained-of pain on the individual's functional ability to work, taking into account the claimant's daily activities; his past work history and efforts to work; the dosage, effectiveness, and side effects of medication; the nature and intensity of the reported pain; medical evidence from treating physicians and third parties; medical evidence and laboratory findings; and the course of treatment. *Scheck*, 357 at 703 (7th Cir. 2004).

The ALJ found that the objective findings in the case failed to provide support for Harris' allegations of disabling symptoms and limitations. As stated above, in her opinon, the ALJ outline the medical evidence in the record and found that it did not support Harris' complaints of pain. Specifically, the ALJ stated that the medical records did not contain objective findings of pain on examination. The ALJ did reference notes

14

from various doctors stating the plaintiff experienced pain and tenderness in his lumbar area, however he also noted that the doctors' findings of pain were based on plaintiff's subjective complaints, not objective findings. Additionally, there were no signs of atrophy or other evidence of disuse, and no evidence of reflex loss, save the chiropractor whose opinion the ALJ properly discredited.

Having found plaintiff's complaints of pain were not supported by objective medical evidence, the ALJ analyzed the factors outlined in SSR 96-7p. The ALJ cited to the fact that Harris had not received any medical treatment from some time in 1993 until November, 1996, when he sought treatment for ailments unrelated to the impairments listed in his application for benefits. Harris sought treatment in late 1996 for complaints of chest pain, not complaints related to his wrist or back pain. Apart from the two visits for chest pain, the only medical treatment plaintiff received after 1993 was various evaluations conducted in an effort to assess his disability, either at the request of the SSA or plaintiff's counsel.

The ALJ also cited to plaintiff's use, or lack there of, of medication to alleviate pain. To support her credibility finding, the ALJ cited to plaintiff's testimony that when he overdoes activity, he takes over the counter medication for relief. The ALJ concluded that Harris' failure to request prescription pain medication showed that when he experiences pain, he achieves significant relief from over the counter pain remedies. Finally the ALJ evaluated plaintiff's daily activities, finding that they were consistent with her RFC determination.

Plaintiff argues that the ALJ has a duty to further develop the record regarding explanations for why plaintiff did not seek further medical treatment and prescription

15

pain medication. We do not agree. The ALJ may presume that had there been evidence that plaintiff could not afford medical care or medication, Harris' counsel would have submitted that evidence. *See Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (ALJ can presume that counseled claimant is presenting his strongest case); *see also Flener ex. Rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (although ALJ has duty to develop record, primary responsibility rests with claimant). Plaintiff never presented evidence about his inability to afford treatment. At the hearing, plaintiff did testify that after he settled his workers' compensation case his medical expenses related to his back injury were no longer covered and he had reached some medical maximum, but he did not elaborate or present any further evidence on the issue. The ALJ even left the record open for a significant period of time after the hearing, to allow for any additional medical evaluations and to provide both sides with an opportunity to provide supplemental evidence. Plaintiff failed to provide any additional information on this issue and cannot now fault the ALJ.

Plaintiff also argues that the ALJ did not elaborate on his testimony about the limitations on his daily activities. The ALJ must articulate support for rejecting entire lines of evidence, but is not required to provide a written evaluation of every piece of evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ sufficiently addressed plaintiff's daily activities.[2]

---

[2]Plaintiff also argues that the ALJ erred in not factoring in his years of heavy toil when determining his RFC. However, plaintiff failed to provide a case law citation for this argument and we will not address it.

Because the ALJ addressed the medical evidence regarding plaintiff's allegation of pain; his lack of treatment for pain; the type, dosage and effectiveness of plaintiff's medication and his daily activities, we find that contrary to plaintiff's assertions, the ALJ adequately addressed the factors in SSR 96-7. The ALJ's credibility determination about plaintiff's allegations of pain is not "patently wrong" and will not be overturned. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Brown*, 869 F.2d 1055, 1057 (7th Cir. 1989). The evidence in the record supports that ALJ's conclusion and the case will not be remanded.

**Testimony of the Vocational Expert**

Finally, plaintiff attacks the testimony and findings of the VE, and alleges errors in the ALJ's step five analysis. In her opinion, the ALJ never reached step five, therefore, we need not address plaintiff's arguments as they relate to any possible step five analytical errors. As stated above, the ALJ's RFC determination that plaintiff could perform light work and did not require a sit/stand option or additional accommodations for his allegations of pain was supported by substantial evidence and not in err. Therefore, the ALJ's determination that plaintiff could perform his past relevant work as a security guard, as it is generally performed in the economy, is also not in err and the ALJ properly concluded her analysis at step four.

Plaintiff, in passing, appears to argue that because his past relevant work as a security guard, as he performed it, is medium work, the ALJ erred in finding that with an RFC limitation of light work, plaintiff could still perform his past relevant work as a

security guard. This argument is contrary to law. A person is able to perform his past relevant work at step four, if he can *either* perform his actual past relevant job, or perform his past relevant job as it is normally performed in the economy. *Anderson v. Bowen*, 868 F.2d 921, 925 n.11 (7th Cir. 1989); *see also* SSR 82-61 ("a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy."). The VE testified that plaintiff's past relevant work as a security guard is normally performed in the economy at the light exertional level. Therefore, the ALJ's finding that plaintiff could perform work as a security guard with an RFC limitation of light work is not in error.

Plaintiff also takes issue with the VE's testimony that a security guard position, as performed in the national economy, would be classified as light work. Plaintiff argues that the VE's testimony conflicted with the *Dictionary of Occupational Titles* ("DOT")(4th Ed., 1991). However, the ALJ is allowed to accept the testimony of the VE, without further inquiry, even if it differs from the DOT, unless the claimant, or the ALJ on claimant's behalf, notices the conflict and requests substantiation from the VE. *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002). Neither the claimant nor the ALJ took issue with the VE's testimony that plaintiff's past relevant work as a security guard, as normally performed in the economy, was light work. The claimant took issue with the VE's testimony regarding the exertional level of the surveillance monitor position, requiring the VE to provide a basis and explanation, as to that position. The VE provided that information and it is part of the administrative record.

18

However, we need not address the surveillance monitor position because that information would have been relevant to step five analysis which the ALJ correctly omitted from her opinion. At step four, the ALJ found that plaintiff could perform his past relevant work and, therefore, was not required to address step 5.

To support his argument, plaintiff cites to SSR 00-4p, which *requires* the ALJ to inquire into whether any inconsistencies exist between the VE's testimony and the DOT regardless of whether anyone raises the issue at the hearing. However, SSR 00-4p is not applicable to this case. The ALJ decided Harris' claim in 1999, prior to the effective date of SSR 00-4p. *See* 65 Fed. Reg. 75, 761 (December 4, 2000) ("This Ruling is effective on the date of its publication in the Federal Register. The clarified standard stated in this ruling with respect to inquiring about possible conflicts applies on the effective date of the ruling to all claims for disability benefits in which a hearing before an ALJ has not yet been held, or that is pending a hearing before an ALJ on remand.") Consequently, SSR 00-4p does not apply and *Donahue* is controlling.

Harris also makes a number of arguments regarding step five analysis, however, as we stated above, we need not address those issues because the ALJ correctly omitted step five analysis from her opinion. Therefore, we decline to comment on plaintiff's argument that the VE's description of the surveillance system monitor as light work is inconsistent with the job as described in the ("DOT") and his arguments regarding the hypotheticals posed to the VE.

19

## Conclusion

For the reasons set forth above, the Court finds that the ALJ's findings at step four are supported by substantial evidence, and that the ALJ built an accurate and logical bridge between the record evidence and her conclusion that Harris could perform his past relevant work as a security guard, as generally performed in the economy. The Court, therefore, denies Harris' motion for summary judgment, and grants the Commissioner's. The decision of the ALJ is affirmed. It is so ordered.

ENTER:

**MICHAEL T. MASON**
**United Stated Magistrate Judge**

**Dated: June 23, 2004**